UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES FOR THE LABORERS HEALTH & WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>P & J UTILITY COMPANY,<br><br>Defendant. | Case No. 21-cv-01075-DMR<br><br>**ORDER TO SUBMIT SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 46 |

On November 2, 2022, Plaintiffs Board of Trustees of the Laborers Health and Welfare Trust Fund for Northern California, et. al., moved pursuant to Federal Rule of Civil Procedure 55(b)(2) for default judgment against Defendant P&J Utility Company, a California corporation ("P&J"). [Docket No. 46 ("Mot.").] The court held a hearing on December 8, 2022, at which Plaintiffs were ordered to provide additional evidence demonstrating the adequacy of service on P&J and establishing the recommended interest rate and liquidated damages amounts. [Docket No. 48.] Plaintiffs timely responded on February 10, 2023. [Docket No. 49 ("Supp. Briefing").] Having reviewed Plaintiffs' supplemental briefing, the court determines that Plaintiffs have not established that service has been effectuated.

Plaintiffs' service efforts are set forth in full in the court's order denying Plaintiffs' renewed motion for service by publication. [Docket No. 36.] In short, after several unsuccessful service efforts, Plaintiffs filed a first motion for service by publication on March 8, 2022, which the court denied without prejudice. [Docket Nos. 21-1, 26.]

On June 7, 2022, Plaintiffs filed a renewed motion for service by publication. [Docket No. 31-1.] The court again denied Plaintiffs' motion without prejudice, in part because Plaintiffs'

1    "own investigation turned up possible leads with other individuals connected to Defendant,
2    including relatives of G. and D. Miller and other corporate officers [that Plaintiffs had not]
3    pursued." [Docket No. 36 at 9.]  In relevant part, Plaintiffs' process server had attempted service
4    on D. Miller—P&J's agent for service of process—at an address identified with him in Sausalito,
5    California.  [Docket No. 46-1, (Schechter Decl., Nov. 1, 2022) ¶ 6.]  According to the process
6    server's notes, on March 4, 2021 a woman at the Sausalito address reported that D. Miller had
7    passed away three years prior and that she thought D. Miller's son Chris ran the business and was
8    located in Southern California, but she did not know his address.  *Id.*, Ex. C.  On April 1, 2021,
9    Plaintiffs' counsel received mail containing a certified death certificate for D. Miller confirming
10   that he died on December 13, 2018.  *Id.* ¶ 10, Ex. D.  The informant's name on the certificate was
11   "Chris Miller, son" and his address was listed as "2445 Lucca Avenue, Los Olivos, CA 93441."
12   *Id.*  Along with the death certificate was a copy of the summons on which the word
13   "DECEASED" was printed without any other note.  *Id.*  On August 21, 2022, Plaintiffs then
14   served Christopher Miller at 2445 Lucca Avenue, Los Olivos, California.  [Docket No. 37.]  A
15   copy of each document was also sent to him via first-class mail.  *Id.*

16        Plaintiffs now maintain that they properly served P&J through substitute service on
17   Christopher Miller.  Supp. Brief at 1, 4.  Unfortunately, their supplemental briefing is confusing.
18   For example, Plaintiffs rely on California Code of Civil Procedure § 415.20(b), which governs
19   substitute service on an individual, not a corporation.  *See* Supp. Brief at 3.  P&J is a corporation,
20   not an individual.  They also cite cases that are readily distinguishable, as discussed below.
21   Plaintiffs offer evidence that conceivably could demonstrate effective service, but they fail to
22   articulate a coherent, legally supported theory.

23        Federal Rule of Civil Procedure 4(h)(1) authorizes service upon a domestic corporation "in
24   the manner prescribed by Rule 4(e)(1) for serving an individual," which, in turn, allows for service
25   "following state law for serving a summons in an action brought in courts of general jurisdiction
26   in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).
27   Pursuant to Rule 4(h)(1), service of a corporation can be effectuated by following state law for
28   serving a summons in the state where the district court is located.

2

Under California Code of Civil Procedure § 416.10, a corporation may be personally served by delivering a copy of the summons and complaint to "the person designated as agent for service of process" or "the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process." Cal. Civ. Proc. Code §§ 416.10(a), (b).

California law also allows service of a corporation to be effectuated through substitute service. "In lieu of personal delivery" to the person to be served as specified in California Code of Civil Procedure § 416.10, a copy of the summons and complaint can be served by substitute service when delivered "during usual office hours [to] his or her office, or if no physical address is known, at his or her usual mailing address with the person who is apparently in charge." Cal. Civ. Proc. Code § 415.20(a). A copy of the summons and complaint must also be mailed to the same address thereafter. *Id.*

In support of their contention that substitute service was proper, Plaintiffs submit evidence of Christopher Miller's purported connection to P&J. The following facts are taken from the supplemental declaration submitted by Plaintiffs' counsel. [*See* Docket No. 49-1 (Schechter Supp. Decl.).] On September 28, 2022, Plaintiffs' counsel received an envelope bearing the return address of "P&J, 41 Dorman Ave Ste 1, San Francisco, CA 94124." Schechter Supp. Decl. ¶ 6, Ex. 1. The envelope contained a copy of the first page of the summons issued against P&J on February 21, 2021 and a copy of Daniel Miller's death certificate. *Id.*, Ex. 2. On October 4, 2022, Plaintiffs' counsel received another envelope from P&J's registered business address on Dorman Avenue in San Francisco. *Id.* ¶ 7, Ex. 3. The envelope contained a copy of the status report served on Christopher Miller, and a handwritten note stating: "Daniel Miller is deceased Dec. 2018. I have no affiliation or knowledge of P&J Utility Company. As far as I know it no longer exists. Please cease and desist from sending me any further legal communication regarding this matter. Regards, Chris Miller." *Id.*, Ex. 4.

Plaintiffs also submit evidence that on at least two occasions between January 1, 2013 and December 31, 2018, which is the period over which Plaintiffs conducted an audit of Defendants'

3

contributions to the union benefit funds, Christopher Miller signed fringe benefit contribution remittance reports and checks on behalf of P&J. [Docket No. 49-3 (Lauziere Supp. Decl.) ¶¶ 3, 4, Exs. A, B.] Specifically, on January 8, 2019, the Laborers Funds Administrative Office of Northern California (LFAO) received a Combined Employer Report of Contributions from P&J reporting the hours worked by its employees during the month of November 2018. The report was signed by Christopher Miller as "POA Dan Miller." Lauziere Supp. Decl. ¶ 3, Ex. A. The signature endorsing the check remitted by P&J for its contributions for the month of November 2018 also appears to be the same as Christopher Miller's signature on the report. Lauziere Supp. Decl. ¶ 3, Ex. A. On January 23, 2019, the LFAO received a Combined Employer Report of Contributions from P&J for the month of December 2018. This report was signed by Christopher Miller as "Trustee for Dan Miller." Lauziere Supp. Decl. ¶ 4, Ex. B.

Plaintiffs argue that Christopher Miller "had a close relationship to P&J, as evidenced by the fact that he signed checks and submitted signed remittance reports to the Plaintiffs on P&J's behalf." Supp. Briefing at 4. They call attention to the fact that in the context of substitute service, "[s]ervice must be made upon a person whose 'relationship with the person to be served makes it more likely than not that they will deliver process to the named party.'" Supp. Brief at 3-4 (quoting *Bein v. Brechtel-Jochim Grp., Inc.*, 6 Cal. App. 4th 1387, 1393 (1992) (quoting *50 Court St. Assoc. v. Mendelson et al.*, 572 N.Y.S.2d 997, 999 (1991))).

*Bein* is not pertinent here because it analyzes whether a defendant corporation's president was properly served through his gate guard. Plaintiffs do not spell out why they believe *Bein* governs the present situation. For example, is Christopher Miller analogous to the corporate president in *Bein*? If so, what facts support that conclusion? Or is Christopher Miller the analog to the gate guard? If so, who is the analog to the corporate president, and what is Christopher Miller's relationship to that person? Plaintiffs ignore, elide, and conflate these important aspects of the analysis.

Stated another way, Plaintiffs have not explained or established who is permitted to receive personal service of process on P&J's behalf pursuant to California Code of Civil Procedure § 416.10. Are Plaintiffs arguing that Christopher Miller is so permitted? If that is the case, then

4

Plaintiffs have not explained how he meets the requirements of section 416.10 as being "the person designated as agent for service of process" or "the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process." Cal. Civ. Proc. Code §§ 416.10(a), (b). If Christopher Miller does not meet those requirements, then Plaintiffs need to identify who does, and then explain how service on Christopher Miller constituted substitute service on P&J pursuant to the requirements of California Code of Civil Procedure § 415.20(a). Perhaps Plaintiffs are trying to make a different argument altogether; if so, they haven't sufficiently explained it. Whatever their theory may be, bottom line, Plaintiffs need to spell it out and support it instead of leaving the court to guess at it.

In addition, Plaintiffs argue that "there is evidence that the Summons and Complaint were received by P&J." Supp. Brief at 4. In support, Plaintiffs point to the fact that 1) P&J sent a copy of Daniel Miller's death certificate to Plaintiffs' counsel from its registered business address in San Francisco, and 2) Christopher Miller sent mail addressed to Plaintiffs' counsel using an envelope bearing P&J's address as the return address. Plaintiffs rely on a string of cases to conclude that "[t]hese mailings demonstrate that it is more likely than not that Christopher Miller delivered the Summons and Complaint to P&J—or that a person closely affiliated with P&J or acting on its behalf (here, Christopher Miller) actually received the Summons and Complaint—and that P&J was thus notified of the Trust Funds' Complaint." Supp. Briefing at 4-5.

Plaintiffs' cited cases are distinguishable. Two of the three cases involve substitute service on an individual defendant instead of a corporation. *See Ellard v. Conway*, 94 Cal. App. 4th 540 (2001) (analyzing whether substitute service of individual defendants was proper under section 415.20(b)); *Berdux v. Project Time & Cost, Inc.*, 669 F. Supp. 2d 1094 (N.D. Cal. 2009) (same). The third case analyzes service on an individual authorized to receive service on behalf of a corporate defendant, namely the designated agent for service of process. *See Cromwell v. Certified Forensic Loan Auditors*, No. 17-CV-02429-DMR, 2019 WL 1095837, at *9-10 (N.D. Cal. Jan. 10, 2019), *report and recommendation adopted*, No. C 17-02429 SBA, 2019 WL

5

2181969 (N.D. Cal. Feb. 12, 2019).

In sum, Plaintiffs have not adequately explained and supported their position on service. **By May 31, 2023**, Plaintiffs shall submit additional briefing and evidence to address these deficiencies or, in the alternative, to present a new theory establishing that P&J was properly served with the summons and complaint. Plaintiffs must make clear arguments that (1) describe the type of service effectuated and point to the relevant service statute; (2) set forth the elements for each type of service they assert has been effectuated, and (3) identify the evidence in support of each of these elements.

Immediately upon receipt of this order, Plaintiffs shall serve P&J with a copy of this order and file a proof of service with the court.

**IT IS SO ORDERED.**

Dated: May 5, 2023

Donna M. Ryu
Chief Magistrate Judge